*In re* CERTIFIED QUESTION FROM THE UNITED STATES
DISTRICT COURT FOR THE EASTERN DISTRICT OF MICHIGAN
(WAESCHLE v OAKLAND COUNTY MEDICAL EXAMINER)

Docket No. 140263. Argued October 7, 2010 (Calendar No. 8). Decided
October 29, 2010.

Karen Waeschle, individually and on behalf of others similarly
situated, brought an action in the United States District Court for
the Eastern District of Michigan against, among others, the
Oakland County Medical Examiner, who had retained the brain of
Waeschle's deceased mother after completing her autopsy and
returning the rest of her body to Waeschle. The district court
denied in part defendants' motion for summary disposition and
their motion to certify the underlying legal question to the
Michigan Supreme Court on the ground that Waeschle had a
clearly established federal constitutional property right to the
decedent's brain. The United States Court of Appeals for the Sixth
Circuit reversed these judgments in *Waeschle v Dragovic*, 576 F3d
539 (CA 6, 2009), and remanded the case to the district court with
instructions to certify the following question to the Michigan
Supreme Court:

Assuming that a decedent's brain has been removed by a
medical examiner in order to conduct a lawful investigation into
the decedent's cause of death, do the decedent's next-of-kin have a
right under Michigan law to possess the brain in order to properly
bury or cremate the same after the brain is no longer needed for
forensic examination?

The Supreme Court granted the request to answer the certified
question pursuant to MCR 7.305(B). 485 Mich 1116 (2010).

In an opinion per curiam signed by Chief Justice KELLY and
Justices CAVANAGH, CORRIGAN, MARKMAN, and HATHAWAY, the Su-
preme Court *held*:

Assuming that a decedent's brain was removed by a medical
examiner to conduct a lawful investigation into the decedent's
cause of death, the decedent's next of kin did not have a right
under Michigan law to possess the brain after it was no longer
needed for forensic examination. The statutory provision in effect
at the relevant time, MCL 52.205(5), required only the prompt

return of the body, and it permitted a medical examiner to retain portions of the body to detect crime. It is undisputed that when this provision was enacted, the historical practice of medical examiners was to retain, examine, and later dispose of decedents' brains. No Michigan caselaw gives a decedent's next of kin a possessory right to the decedent's brain following a lawful forensic examination.

Certified question answered in the negative.

Justice Young, dissenting, would decline to answer this certified question in light of its diminished legal significance after the recent amendment of the relevant statute.

Justice Davis, dissenting, would decline to answer the certified question because he was not persuaded that the Court should answer this certified question.

Medical Examiners — Autopsies — Return of Body Parts.

Under Michigan common law and statutory law before 2010 PA 108 was enacted, a decedent's next of kin had no right to possess the decedent's brain after it was no longer needed for lawful forensic examination (MCL 52.205).

*Dworken & Bernstein Co., L.P.A.* (by *Erik L. Walter* and *Patrick J. Perotti*), and *John H. Metz* for plaintiffs.

*Giarmarco, Mullins & Horton, P.C.* (by *William H. Horton* and *Elizabeth A. Favaro*), and *Keith J. Lerminiaux* for defendants.

Amici Curiae:

*Steven M. Jentzen, P.C.* (by *Steven M. Jentzen*), for the Michigan Association of Medical Examiners, the National Association of Medical Examiners, Wayne County, and the Michigan Association of Counties.

*Daniel A. Ophoff*, Corporate Counsel, for Kent County.

*Kerr, Russell and Weber, PLC* (by *Joanne Geha Swanson* and *Daniel J. Schulte*), for the Michigan State Medical Society.

PER CURIAM. The United States District Court for the Eastern District of Michigan certified the following question to this Court pursuant to MCR 7.305(B):

> Assuming that a decedent's brain has been removed by a medical examiner in order to conduct a lawful investigation into the decedent's cause of death, do the decedent's next-of-kin have a right under Michigan law to possess the brain in order to properly bury or cremate the same after the brain is no longer needed for forensic examination?[1]

We granted the request to answer the question.[2] Having heard the parties' oral arguments, and having reviewed the briefs filed by the parties and other interested amici curiae, we answer under the law applicable to this case and the facts as presented: No, assuming that a decedent's brain was removed by a medical examiner to conduct a lawful investigation into the decedent's cause of death, the decedent's next of kin does not have a right under Michigan law to possess the brain in order to properly bury or cremate the same after the brain is no longer needed for forensic examination.

At all times relevant to the underlying federal district court case, this issue was governed by MCL 52.205(5).[3] This statute provided:

> The county medical examiner shall, after any required examination or autopsy, promptly deliver or return the

---

[1] See *Waeschle v Dragovic*, 576 F3d 539, 551 (CA 6, 2009).

[2] *In re Certified Question (Waeschle v Oakland Co Med Examiner)*, 485 Mich 1116 (2010).

[3] MCL 52.205 was originally enacted in 1953 by Public Act 181. A relative's statutory "right and power to make decisions about funeral arrangements and the handling, disposition, or disinterment of a decedent's body" under Michigan's Estates and Protected Individuals Code is expressly "[s]ubject to 1953 PA 181, MCL 52.201 to 52.216 . . . ." MCL 700.3206(1). In response to this case, the Legislature amended MCL 52.205, effective July 1, 2010. 2010 PA 108. MCL 52.205(6) now specifically addresses medical examiners' duties to next of kin under the circumstances presented here.

body to relatives . . . except that the medical examiner may
retain, as long as may be necessary, any portion of the body
believed by the medical examiner to be necessary for the
detection of any crime.

Because the statute required only prompt return of
"the body"—and because it permitted the medical ex-
aminer to retain portions of the body in order to detect
crime—this law provided next of kin no clear right to
the return[4] of a brain lawfully removed and retained for
forensic examination after the body was returned to the
decedent's family for burial or cremation. Further,
plaintiff has not disputed defendants' assertions that
there was an historical practice of retaining, examining,
and later disposing of an examined brain when MCL
52.205 was enacted in 1953 and that medical examiners
promulgated rules to permit this practice under MCL
52.201c.[5] Finally, no Michigan caselaw gives next of kin
a possessory right to a decedent's brain following a
lawful forensic examination.

KELLY, C.J., and CAVANAGH, CORRIGAN, MARKMAN, and
HATHAWAY, JJ., concurred.

YOUNG, J. (dissenting). I continue to adhere to my
stated position in In re Certified Question (Wayne Co v
Philip Morris Inc), 622 NW2d 518 (Mich, 2001), that
this Court lacks the authority under state law to answer
certified questions. However, my position has failed to

----

[4] Plaintiff here did not request return of the brain. We express no
opinion concerning whether, before the 2010 amendment of MCL 52.205,
a medical examiner would have had a duty to return a brain in response
to a relative's timely request if the medical examiner had not destroyed
the brain and had no further need to examine it. MCL 52.205(6) now
expressly delineates a medical examiner's duties under such circum-
stances.

[5] MCL 52.201c was enacted by 1969 PA 92, effective July 24, 1969.

carry the day. See proposed amendment of MCR 7.305, 462 Mich 1208 (2000). While this Court has chosen to assert the right to exercise that authority, I will exercise careful discretion before answering any certified question.

In light of the recent amendment of the relevant statute by 2010 PA 108, this case now only concerns a putative class of persons whose arguable claims arose before the effective date of the amendment. Accordingly, the legal significance of the question certified by the United States District Court for the Eastern District of Michigan is considerably diminished. I would decline to answer the question in this instance.

DAVIS, J. (*dissenting*). I would decline to answer the certified question because I am not persuaded that the Court should answer this certified question.